1

2

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                 **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   DANNIE RAY HILLHOUSE,              No. CIV S-03-0142 MCE CMK P

12              Petitioner,             **DEATH PENALTY CASE**

13        v.                           **AMENDED FINDINGS**

14   Warden of San Quentin State Prison, **AND RECOMMENDATIONS**

15              Respondent.

16   _____/

17            Petitioner, Dannie Ray Hillhouse, who has been convicted of first-degree murder

18   and sentenced to death seeks relief by writ of habeas corpus filed December 2003.  Petitioner is

19   represented by panel attorneys James Thomson and Soar Stetler.  Currently before the court is

20   respondent's motion to dismiss.  This matter came on for hearing before the court on November

21   8, 2006.  Paul O'Connor appeared on behalf of respondent, and Soar Stetler appeared for

22   petitioner.

23            The court filed findings and recommendations on April 6, 2007.  On April 13,

24   2007, respondent filed objections.  In light of the objections, the court issues amended findings

25   ///

26   ///

1

1   and recommendations, which take into account respondent's objections regarding record based

2   claims, the probation report and clerical errors, but do not change the court's findings on claim

3   MM.

4   I.        Factual And Procedural Background[1]

5              In 1992 petitioner was convicted of first-degree murder, robbery, and kidnapping

6   for robbery[2] and sentenced to death.   On the night of the offense, petitioner had gone to the

7   Madison Bear Garden, a bar in Chico, California, with his brother Lonnie Hillhouse (Lonnie).

8   At the bar, petitioner and Lonnie met Brett Schultz (Schultz), who purchased the three men a

9   pitcher of beer with a $100 dollar bill.   After a night of drinking, the three left the bar together,

10  with petitioner driving Schultz's truck.

11             Petitioner drove the three to an apartment complex, where Lonnie separated from

12  the group.   Later that night, Lonnie saw petitioner and Schultz sitting in Schultz's truck.   Schultz

13  was passed out from drinking.   Lonnie stated that petitioner approached him and divulged that

14  Schultz had a lot of money and petitioner wanted to kill him and take it.[3]   Lonnie told petitioner

15  he wanted no part in the plan; however after petitioner threatened him, Lonnie got into the truck.

16             Petitioner, with Lonnie and Schultz in the truck, drove towards Paradise,

17  California.   As they were driving, petitioner directed Lonnie to check Schultz's pockets, which

18  Lonnie did.   Lonnie took several crumpled bills from Schultz and gave them to petitioner.   At

19  some point, Schultz started coming to and asked where they were going.   Petitioner supplied an

20  explanation, but as they continued driving, Schultz became increasingly concerned and asked to

21

22             [1]For a more detailed factual discussion, see the California Supreme Court's decision in
     Hillhouse's direct appeal, People v. Hillhouse, 27 Cal.4th 469, 40 P.3d 754 (Cal. 2002).

23             [2] The Court of Appeals reversed the kidnapping for robbery conviction and kidnapping-
     murder special circumstance and otherwise affirmed the conviction.   People v. Hillhouse, 27
24   Cal.4th 469, 40 P.3d 754 (Cal. 2002).

25             [3]Lonnie testified against petitioner and accepted a plea bargain to serve a life sentence.
     Part of the agreement included that the prosecutor would attempt to have Lonnie incarcerated in
26   Oklahoma, which is where Lonnie is presently incarcerated.

turn around.  Petitioner turned the truck around.  Shortly thereafter, Schultz requested to stop so that he could relieve himself.

All three men got out of the truck.  Schultz began urinating.  Petitioner walked around the truck and approached Schultz, saying something that Lonnie did not understand.  Schultz told petitioner not to "fuck with him while he was peeing."  Petitioner responded "I ought to kill you."  Lonnie then heard a thunk and Schultz started gasping for air.  Lonnie testified that petitioner then stabbed Schultz twice more.

Petitioner asked Lonnie to help him drag Schultz's body behind some trees.  The two men moved the body into the brush and then drove back to Chico.  On the way back, petitioner threw a knife from the truck.

At the guilt phase, the jury voted to convict petitioner of all charges.

At the penalty phase, the state introduced evidence of various other crimes involving force or violence that defendant had committed.  Petitioner had raped a college student and then later, with the help of a cohort, sexually assaulted her again at knife point.  Petitioner had repeatedly sexually assaulted a woman with whom he had a relationship in the 1980's and members of her family.  Petitioner assaulted his landlord in 1986, knocking out several of his teeth.  Several other assaults were detailed.  The state also introduced evidence that petitioner had committed lewd acts with his sister, for which he was convicted in Oklahoma of indecent or lewd acts with a child under fourteen.  He also committed various crimes against his brother, Lonnie, including sexual assault.

The defense introduced evidence about petitioner's troubled childhood.  His father, Donald, repeatedly abused his mother, sometimes in front of the children.  Donald was absent from his children's lives.  Petitioner did poorly in school; dropping out in the ninth grade.  Petitioner started drinking and using marijuana at a young age.  Four mental health experts testified about petitioner's mental condition.

At the penalty phase, the jury returned a verdict of death.

1        In November 1997, over five years after the jury's verdicts, the California

2  Supreme Court appointed counsel to represent petitioner in his automatic appeal, which included

3  any state habeas proceedings.  Petitioner filed his brief on direct appeal in May 2000.  The state

4  filed a reply in January 2001, and petitioner filed a reply in August 2001.  In December 2001, the

5  automatic appeal was argued and submitted to the California Supreme Court.  In February 2002,

6  the California Supreme Court issued its decision on petitioner' automatic appeal; the Court

7  reversed the kidnapping for robbery conviction and the kidnapping-murder special circumstance,

8  but otherwise affirmed the judgment.  See People v. Hillhouse, 27 Cal. 4th 469, 480 (Cal. 2002).

9  Specifically, the Court held that the evidence was insufficient to support the kidnapping for

10  robbery and the kidnapping-murder special circumstance.  See id. at 497.  Petitioner was deemed

11  to be not guilty of kidnapping.  The court acknowledged that the jury was instructed that the

12  alleged kidnapping could be used as a theory of felony murder; however, the court did not

13  reverse the jury's finding of first-degree murder because there was evidence of a robbery and

14  lying in wait.  In short, the court concluded that the first-degree murder verdict rested on at least

15  one correct theory.  See id. at 497.  In May 2002, the California Supreme Court denied

16  petitioner's request for a rehearing without comment.

17        In August 2002, petitioner filed a motion for a writ of certiorari for review of the

18  California Supreme Court's denial of his direct appeal.  On January 13, 2003, the United States

19  Supreme Court denied the petition for a writ of certiorari.  Thus, petitioner's conviction became

20  final on January 13, 2003.

21        Petitioner filed his first state habeas petition in November 2001.  The California

22  Supreme Court denied petitioner's state habeas petition, without comment, in October 2002.

23        Petitioner requested appointment of counsel, permission to proceed in forma

24  pauperis, and a stay of execution in this court on January 24, 2003.  James Thomson was

25  ///

26  ///

appointed as lead counsel for petitioner on February 20, 2003.  Soar Stetler was appointed as second counsel for petitioner on November 5, 2003.    Petitioner filed his first federal habeas petition on December 31, 2003.

On December 31, 2003, petitioner also filed a motion to hold his federal habeas proceedings in abeyance pending adjudication by the California Supreme Court of a second state habeas petition involving claims that were not exhausted in the first state petition.  On March 16, 2004, this court granted petitioner's request to hold the federal proceedings in abeyance.

Mr. Thomson and Mr. Stetler were appointed by the California Supreme Court to represent petitioner in his second state habeas proceedings in April 2004.  On July 31, 2004, petitioner filed his second state habeas petition.  On November 10, 2004, the California Supreme Court denied the petition.  On February 8, 2005, petitioner filed a petition for writ of certiorari. Petitioner filed a request in this court that his federal habeas proceedings continue to be held in abeyance in light of his right to petition the United States Supreme Court for a writ of certiorari. The petition for certiorari was denied on October 3, 2005.

After the denial of certiorari, petitioner filed a request in this court for a sixty day extension of time to file his amended federal habeas petition.  Respondent filed a statement of non-opposition to the request.  The court neither granted nor denied petitioner's request for an extension of time to file his first amended federal petition.  Petitioner filed his first amended federal petition on December 2, 2005.   On May 1, 2006, respondent filed a responsive pleading–the motion to dismiss which is currently before the court for decision.

II.    Conceded Claims

As an initial matter, the court notes that respondent concedes that some of petitioner's amended claims relate back to his original claims.  Respondent concedes that the following claims, or parts of claims, relate back to the original petition:

       (1)    Claim A– THE VENUE OF THE TRIAL WAS UNCONSTITUTIONAL relates back

       (2)    Claim B– THE SELECTION OF THE GUILT PHASE JURY

VIOLATED MR. HILLHOUSE'S RIGHTS UNDER THE SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS relates back as to jurors Steve B and Doug T.

(3)    Claim Q– ILLEGALLY OBTAINED EVIDENCE CAUSED PETITIONER TO BE UNCONSTITUTIONALLY CONVICTED AND SENTENCED TO DEATH relates back only to the extent that it concern's Lonnie's statements.

(4)    Claim Z– PETITIONER WAS UNCONSTITUTIONALLY FOUND GUILTY BY A JURY THAT FAILED TO UNANIMOUSLY FIND EVERY ELEMENT TRUE BEYOND A REASONABLE DOUBT relates back

(5)    Claim DD– THE JURY INSTRUCTIONS WERE INCOMPLETE AND CONFUSING AND THUS UNCONSTITUTIONAL relates back

(6)    Claim HHH– THE CALIFORNIA SUPREME COURT IMPLICITLY HELD THAT PETITIONER WAS CONVICTED AND SENTENCED TO DEATH BY A JURY AND TRIAL COURT THAT WERE UNREASONABLE relates back

(7)    Claim JJJ– THE CALIFORNIA SUPREME COURT ERRED ON APPEAL WHEN IT FAILED TO REVERSE THE DEATH PENALTY AFTER FINDING THAT ONE SPECIAL CIRCUMSTANCE WAS IMPROPERLY TRUE relates back.

III.    <u>Standards For Relation Back Under AEDPA's One-Year Limitations Period</u>

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996. AEDPA places a one-year statute of limitations on the filing of petitions for writs of habeas corpus. <u>See</u> 28 U.S.C. § 2244(d). The one-year limitations period applies to all federal petitions filed after the effective date of AEDPA. As petitioner's first federal habeas petition was filed on December 31, 2003, AEDPA's statute of limitations applies. Untimely petitions are barred from federal review. <u>See</u> 28 U.S.C. § 2244(d).

In ordinary civil pleadings, Rule 8 requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." <u>See</u> Fed. R. Civ. P 8(a)(2). Rule 2 of the Rules Governing Habeas Corpus Cases requires a more detailed statement. "The habeas rule instructs the petitioner to 'specify all the grounds for relief available to [him]' and to 'state the facts supporting each ground.'" <u>See</u> <u>Felix v. Mayle</u>, 545 U.S. 644, 649 (2005)(quoting Rule 2(c) of the Rules Governing Habeas Corpus Cases). Congress has provided that a habeas petition may be amended as provided in the rules of procedure applicable to civil actions. 28 U.S.C. § 2242. Under the Federal Rules of Civil Procedure, pleading amendments relate back to the date

1   of the original pleading when "the claim...asserted in the amended pleading arose out of the

2   conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading."

3   See Fed. R. Civ. P 15(c)(2).

4          Thus, in order for an amended habeas petition, filed after AEDPA's one-year

5   limitation, to relate back to the original timely pleading, the amended and original claims must

6   be tied by a common core of operative facts. See Mayle, 545 U.S. at 664.

7   IV.   Discussion

8          In his motion to dismiss, respondent contends that 37[4] of the 88 claims in

9   petitioner's first amended federal habeas petition do not relate back to the original petition under

10  the rule set forth in Mayle, and are, therefore, untimely.  In his opposition to the motion to

11  dismiss, petitioner argues that the motion to dismiss is improper because it is not a responsive

12  pleading to his first amended habeas petition.  He argues that his amended claims are timely

13  under 28 U.S.C. § 2244(d)(1)(D), that his amended claims are timely because they relate back

14  under Mayle and preserve petitioner's original, timely filing date of December 31, 2003 , and

15  that, even if his amended claims are untimely, he is entitled to equitable tolling.

16     A.   Proper Response To A Habeas Petition

17          The court first considers whether a motion to dismiss is a proper response to a

18  petition for a writ of habeas corpus.  Petitioner notes that Rule 5 of the Rules Governing Habeas

19  Corpus Cases requires that an answer to a habeas petition must address all the allegations in the

20  petition.  Petitioner argues that respondent did not properly respond to the amended petition

21  under Rule 5 because the motion to dismiss does not respond to all of the claims in the amended

22  petition and, instead, only addresses half of the amended claims.  Petitioner urges the court to

23  find the motion to dismiss unresponsive and to deny the motion and require respondent to file an

24  _____

25          [4]In his motion to dismiss, respondent argued that 48 of the amended claims did not relate
    back (doc. 56 at 10-18); however, in his reply to petitioner's opposition, respondent conceded
26  that some of the challenged claims related back and argued that 44 claims were untimely. (Doc.
    84 at 9.)

answer.  In the alternative, petitioner urges the court to interpret respondent's failure to address half the claims in the amended petition as a concession that petitioner is entitled to relief on these claims.

The court finds that it is in the interests of judicial efficiency to permit the respondent to raise the procedural issue of AEDPA's statute of limitations before responding to the merits of the habeas petition.  The district court has the discretion to order or permit respondents to file a motion to dismiss before respondent files an answer.  See Hab. Corp. R. 4 advisory committee's note 2004 Amendments; White v. Lewis, 874 F.2d 599 (9th Cir. 1989). Thus, although "the state has no right, as it would in non-habeas civil litigation, to file a 12(b)(6) motion to dismiss, the Court now has the discretion to allow such a motion where ... the issues raised by the state are appropriate for summary resolution." Shariff v. Artuz, 1998 WL 17734, *1 n. 1 (S.D.N.Y.Jan.16, 1998).   The court notes that is an acceptable practice in this district to allow motions to dismiss which do not address all the claims in a habeas petition.  See e.g., Burton v. Runnels, CIV-S-02-0675 LKK PAN (JFM) 2006 WL 1062097; Collins v. Runnels, CIV-S-04-1516 DFL GGH, 2006 WL 842369.  Accordingly, the court finds that the instant motion to dismiss is an appropriate response to petitioner's first amended habeas petition.

The court declines to interpret the motion to dismiss as a concession that petitioner is entitled to relief on the claims not addressed in this motion.  Instead, the court recognizes that respondent is raising the  procedural issue of the timeliness of some of petitioner's amended claims under AEDPA and that respondent will address the merits of all claims not barred by AEDPA's one-year statute of limitations in an answer.

B.   Timeliness Of The Claims In Petitioner's Amended Petition

Respondent argues that 37 of the 88 claims in petitioner's first amended petition do not relate back to the claim in his original petition and, therefore, are untimely under AEDPA's one-year limitations period.  Petitioner argues that his claims are timely under 28 U.S.C. § 2244(d)(1)(D) and that his claims are timely because they relate back under Mayle.

1         1.     28 U.S.C. § 2244(d)(1)(D)

2     AEDPA provides in relevant part:

3    (d)(1)   A 1-year period of limitations shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a state

4         court.  The limitation period shall run from the latest of—

5        (A)    the date on which the judgment became final by the conclusion of direct review or the expiration of time for seeking such review;

6  ....

7        (D)    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due

8            diligence.

9    (d)(2)   The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent

10         judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

11

12  22 U.S.C. § 2254 (d)(1).  Petitioner states that his first amended petition was filed less than one

13  year after the factual predicates for the amended claims were discovered through due diligence

14  of his appointed counsel, and, therefore, are timely under 2244(d)(1)(D).

15        In support of this contention, petitioner merely recites the history of counsel's

16  appointment and some procedural case history.  Specifically, petitioner states that counsel were

17  appointed in February and November 2003.  On December 31, 2003, petitioner filed his original

18  federal petition raising exhausted claims and notifying respondent and the court of unexhausted

19  claims that had been discovered by counsel during review of the state court record and

20  preparation of the amended petition.

21        The statute of limitations in § 2244(d)(1)(D) begins to run when the prisoner

22  knows the important facts, not when the prisoner recognizes their legal significance.  See Hansen

23  v. Galaza, 254 F.3d 1150 (9th Cir. 2001).  In his argument that § 2244(d)(1)(D) applies,

24  petitioner does not indicate the date that he or his counsel became aware of the allegedly newly

25  discovered factual predicates for his amended claims.  Instead, petitioner makes a conclusory

26  claim that his amended petition was "filed less than one year after the factual predicates for these

1   claims were first discovered." (Doc. 75 at 52.)  While the court could speculate when that time

2   was–anytime between February 20, 2003, when Mr. Thomson was appointed to represent

3   petitioner and December 2005 when the amended petition was filed, the court declines to do so.

4    The court finds that counsel has not made an adequate showing of due diligence to invoke §

5   2244(d)(1)(D)'s tolling provision.

6            2.     Relation Back Of The Amended Claims To The Original Claims

7            After AEDPA's one-year statute of limitations has run, Federal Rule of Civil

8   Procedure (15)(c) is the only vehicle through which a petitioner may amend his federal habeas

9   application.  See Mayle, 545 U.S. at 644.  An amendment to the original petition only relates

10   back to the date of the original when "the claim or defense asserted in the amended pleading

11   arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth" in the

12   original petition.  See id.  The common core of operative facts must not be viewed at too high a

13   level of generality and an occurrence will consist of each separate set of facts that supports a

14   ground for relief.  See id.  Under this framework, the court will analyze the 37 contested claims.

15            First, however, the court considers whether petitioner gave timely notice of the

16   facts and legal theories supporting the claims in his amended petition through his original

17   petition and the contemporaneously filed motion to hold the federal proceedings in abeyance.

18   Both the original petition and the abeyance motion included footnotes which stated that the

19   potentially unexhausted claims "included but were not limited to" several claims which were

20   listed out in the footnote.  (Doc 12 at 3, n.1; Doc. 13 at 8, n. 5.)  Although the claims were listed,

21   the operative facts were not included.

22            Many, but not all, of the unexhausted claims listed in the original petition and the

23   abeyance motion are record based claims, meaning that respondent would have had notice of the

24   operative facts from the record.  Mayle, however, is  very clear that a "notice" pleading is not

25   sufficient for relation back in habeas cases. See Mayle, 545 U.S. at 655-56, 661.  Specifically,

26   Mayle clarified that the Rules Governing Habeas Corpus Cases requires that a petition specify

1   the grounds for relief available to the petitioner and the facts supporting each ground. See id. at

2   655-656.

3          In support of his contention that he gave timely notice of the factual basis for his

4   amended claims in the footnotes in the original petition and abeyance motion, petitioner directs

5   the court to a recent case from the Northern District, Gonzales v. Terhune, 2006 WL 83054

6   (unpublished N.D. Cal. 2006).  In Gonzales, the court held that the petitioner had satisfied the

7   "dictates of Mayle by giving the state and the court specific and timely notice of the 'facts and

8   legal theory he wanted to later include in his amended petition'" in his abeyance motion.  Id. at

9   *17 (internal citations omitted).  The court specifically noted that "petitioner provided notice in

10  his original petition of the claims yet to be exhausted in state court and the factual basis for those

11  claims."  Id. at *14, *17.  In Gonzales the holding that petitioner had satisfied Mayle's

12  requirements rested on the operative facts of his unexhausted claims being included in his

13  abeyance motion and in his amended petition.  See id. at *17.

14         Petitioner's case is distinguishable from Gonzales because petitioner did not

15  detail the operative facts of his unexhausted claims in either his original petition or in his

16  abeyance motion.  Instead, the footnote contained in each filing was more like a notice pleading.

17  Given the restrictive language of Mayle, the court finds that the footnotes in the original petition

18  and the abeyance motion were not sufficient to provide notice of petitioner's claims for the

19  purposes of relation back.

20         Accordingly, the court examines the 37 contested claims to determine if they

21  relate back to the original claims under Mayle.  See Mayle, 545 U.S. at 657.

22         Claim B          THE SELECTION OF THE GUILT PHASE JURY VIOLATED
                            MR. HILLHOUSE'S RIGHTS UNDER THE SIXTH, EIGHTH
23                          AND FOURTEENTH AMENDMENTS

24  (Doc. 42 at 9.)  Respondent concedes that this claim relates back to the timely filed claim with

25  respect to jurors Steve B. and Doug T.  In Claim W2 of the original complaint, petitioner

26  asserted that during voir dire trial counsel informed the jury about petitioner's extensive history

1   of bad acts... Time and time again trial counsel listed these bad acts when individually examining

2   jurors. (Doc. 13 at 145.)  The amended petition individually names jurors, but the operative facts

3   remain the same as in the original petition—time and time again trial counsel listed petitioner's

4   bad acts when individually examining jurors.  The claim asserted in the amended pleading arose

5   out of the conduct, transaction, or occurrence set forth or attempted to be set forth" in the

6   original petition. The court finds that this claim relates back in its entirety.

7           Claim E          THE PETIT JURY VENIRE IN BUTTE COUNTY WAS
                             UNCONSTITUTIONAL SINCE IT FAILED TO REPRESENT A
8                            FAIR CROSS-SECTION OF THE COMMUNITY

9   (Doc. 42 at 69.)  In his original petition, petitioner mentioned general facts concerning the bias

10  of potential jurors.  However, these claims concern trial court error for denying challenges for

11  cause to perspective jurors (Doc. 13 at 41-45) and failure to conduct voir dire in a competent

12  manner (Id. at 145). For example, the original petition stated that "by permitting obviously

13  biased jurors to serve on the jury, the trial court erred." (Id. at 151-52)  There is no "core of

14  facts" in the original petition which relates to systematic under representation of minority groups

15  in the venire.  The court finds that this claim does not relate back under Mayle and is untimely.

16          Claim F          TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO
                             ADDRESS AND PRESERVE JURY SELECTION ISSUES
17

18  (Doc. 42 at 71.)  The original petition asserted that trial counsel was ineffective for failing to

19  conduct voir dire questioning in a competent manner.  (Doc. 13 at 42.)  He argued that the trial

20  court erred in denying challenges to perspective jurors. (Doc 13 at 41.)  However, these claims

21  are separate in time and type from the claim that trial counsel was ineffective for failing to

22  address and preserve jury issues.  There is no core of facts concerning trial counsel's failure to

23  preserve issues.  In fact, the claim regarding voir dire, concerns the trial counsel's allegedly poor

24  decision to detail petitioner's previous crimes to the jury, not any failure to act.  The court finds

25  that this claim does not relate back under Mayle and is untimely.

26  ///

1   Claim G        THE JURY WAS BIASED TOWARDS THE STATE
                                   GENERALLY AND TOWARDS THE PROSECUTOR
2                                      SPECIFICALLY

3   (Doc. 42 at 72.)  In his original petition, petitioner argued that there was significant media

4   publicity surrounding the trial and that juror Steve B. had read about the trial and was biased,

5   based on media coverage, to believe that petitioner was guilty (original pet. 43.)  In claim G,

6   petitioner argues that Carol P. approached the prosecutor at a concert and told her that she was

7   doing a great job.  In support of his argument that the claim relates back, petitioner argues that he

8   made lots of references to bias by other jurors (Steve B., juror JA, juror JB, etc.) (opp. pg 19);

9   however keeping Mayle's dictates in mind, it is clear that this claim is not similar to core facts or

10   in time or type to a claim in the original petition.  Carol P.'s meeting with the prosecutor at a

11   concert (during the trial) and telling the prosecutor she was doing a good job is separated in time

12   and type from claims that jurors were biased due to media attention surrounding the trial.

13          Petitioner also points to his abeyance motion's footnote which listed the

14   unexhausted claim that trial counsel was ineffective for failing to conduct adequate voir dire or

15   to exercise challenges to dismiss partial or biased jurors.  (Doc. 75 at 21.)  However, the

16   amended claim that counsel was ineffective for failing to conduct adequate voir dire to discover

17   biased jurors differs in time and type from the amended claim of  jury bias towards the

18   prosecutor claim.  The court finds that this claim does not relate back under Mayle and is

19   untimely.

20   Claim Q        ILLEGALLY OBTAINED EVIDENCE CAUSED PETITIONER
                                   TO BE UNCONSTITUTIONALLY CONVICTED AND
21                                      SENTENCED TO DEATH

22   (Doc. 42 at 138.)  Respondent concedes that to the extent that claim Q concern's Lonnie's

23   statements, it relates back.   The original petition mentioned the initial police search of the

24   dwelling Lonnie and petitioner shared, which contained language that trial counsel failed to

25   present available evidence to impeach Lonnie's credibility.  As part of this claim, petitioner

26   alleged that trial counsel failed to examine a witness about some shoes, because counsel believed

1  that the washed shoes were Lonnie's.  The original petition mentions examining two pairs of

2  shoes and mentions that Lonnie was in charge of separating all the clothes for the police and

3  telling the police which clothes he wore and which clothes petitioner wore.  (Doc. 13 at 150.)

4      In his opposition to the motion to dismiss,  petitioner claims that the seizure of property

5  references the initial police search of the dwelling where Lonnie and petitioner lived.  However,

6  Claim Q in the amended petition does not make clear what property was illegally seized.  As the

7  Supreme Court recently made clear, a petitioner does not satisfy the Rule 15 "relation back"

8  standard unless the conduct arises from the same conduct, transaction or occurrence.  See Mayle,

9  545 U.S. at 655-56.  The claims added by amendment must arise from the same core facts.

10  See id.  The court finds that the amended claim relates back to the original claim with regard to

11  Lonnie's statements and the initial search of the dwelling where petitioner and Lonnie were

12  staying.

13  Claim R       PETITIONER WAS UNCONSTITUTIONALLY CONVICTED
               AND SENTENCED TO DEATH BASED ON HIS
14             UNLAWFULLY OBTAINED STATEMENTS

15  (Doc. 42 at 140.)  Petitioner asserts that amended claim R relates back to Claim A in the original

16  petition.  Claim A in the original petition is based on facts pertaining to Lonnie's statements.

17  The court finds that the amended claim concerning petitioner's statements does not relate back to

18  the timely claim.

19      Petitioner further argues that amended claim R relates back to the ineffective assistance

20  of counsel claim which discusses petitioner's statements to guards during transportation;

21  however, the court finds that the amended claim is separated in type from the claim in the

22  original petition and does not relate back.

23  Claim S.       THE TESTIMONY OF THE STATE'S CRIMINALIST AS TO
               INTOXICATION WAS UNCONSTITUTIONAL
24

25  (Doc. 42 at 142.)  The original petition claimed that trial counsel was ineffective for failure to

26

1   timely investigate and prepare for trial. (Doc. 13 at 138).  The BEAM[5] test (what the state's

2   criminalist testified about) was described, but the focus of the factual claim was that trial counsel

3   did not have the results of the test, which the original petition claimed would have shown no

4   premeditation, prior to the beginning of the trial.  There is no core of operative facts between

5   these facts and the facts alleged in the amended petition concerning the rebuttal testimony about

6   intoxication.  The court finds that this claim does not relate back and is untimely.

7        Claim W        THE PROSECUTION'S NUMEROUS IMPROPER ACTS AS TO
                        THE CHARGES AGAINST PETITIONER VIOLATED HIS
8                        CONSTITUTIONAL RIGHTS

9   (Doc. 42 at 155.)  The original petition described the prosecutor's refiling of charges and her

10  amendment of charges in the factual history section of the petition.  Petitioner did not use these

11  facts to support a claim for relief.  There is no authority for allowing relation back to claims

12  mentioned in the factual history section of a habeas application.  Mayle stresses that a petitioner

13  must state all the grounds for relief from the conviction.  A petitioner must show a common core

14  of operative facts uniting the original and newly asserted claims.  See Mayle, 545 U.S. at 656-57.

15  An event described as a factual event in the factual background section of a petition does state

16  "facts that point to a real possibility of constitutional error."  There is no claim in the original

17  petition with a similar core set of facts to amended claim W.  The court finds that this claim does

18  not relate back and is untimely.

19       Claim X        THE STATE'S PLEA BARGAIN WITH PETITIONER'S
                        BROTHER AND CO-DEFENDANT WAS
20                       UNCONSTITUTIONAL

21  (Doc. 42 at 159.)  In claims A and C of his original petition, petitioner discussed Lonnie's plea.

22  In claim A, petitioner stated that Lonnie's testimony was insufficient to support his conviction

23  and death sentence.  Petitioner's supporting facts were that Lonnie's testimony was contradicted

24

25       [5]The BEAM test is described in the amended petition. (Doc. 42 at 407.)  It resembles
    something one would encounter at a fraternity party.  It is a test administered by a neurologist
    during which petitioner was forced to drink alcohol until he reached a certain blood alcohol
26  level.

by his own statements and that he gave at least seven different statements to law enforcement. (Doc. 13 at14-16.)  In claim C petitioner argued that his due process rights were violated by Lonnie's coerced plea bargain.   In particular, petitioner emphasized that Lonnie understood that he had to testify in accordance with previous statements, regardless of the truth to get the benefit of his plea bargain.  (Doc. 13 at 38-40.)

In amended claim X, petitioner focuses on Lonnie's probation report, which reveals numerous allegedly improper aspects of the plea deal.  (Doc. 42 at 159.)  The original claim and the amended claim do not relate to evidence obtained at the same time or to the same conduct.  See Mayle, 545 U.S. at 664, n.7.  They are not tied together with a similar operative core of facts.  See id.  It is not possible to inter-change the facts of the original claim with the supporting facts in amended claim X.  The court finds that this claim does not relate back to the original petition and is untimely.

Claim  Y        THE PROSECUTION PROVIDED IMPROPER
                CONSIDERATION TO WITNESSES IN THIS CASE

(Doc. 42 at166.)  Petitioner's original petition complained about certain aspects of prosecution witness testimony.  He asserted that he was limited in his cross examination of Gary Reep and, regarding Dodge's testimony, focused largely on how it contradicted Lonnie's testimony (Doc. 13 at 16.)  The original petition discussed that Lonnie's testimony was inherently not credible and was insufficient to support petitioner's death sentence.  (Doc. 13 at 11-17.)  The claims in the original petition do not share a common core of facts with the theory that prosecution witnesses received improper consideration.   The facts are different in both time and type.  The court finds that this claim does not relate back to the original filing and is untimely.

///

///

///

1       Claim Z      PETITIONER WAS UNCONSTITUTIONALLY FOUND
2                              GUILTY BY A JURY THAT FAILED TO UNANIMOUSLY
                               FIND EVERY ELEMENT TRUE BEYOND A REASONABLE
3                               DOUBT

4  (Doc. 42 at 169.)  Respondent concedes that this claim relates back because it has a common

5 core of operative facts and merely states a new legal theory.

6       Claim DD     THE JURY INSTRUCTIONS WERE INCOMPLETE AND
7                               CONFUSING AND THUS UNCONSTITUTIONAL

8 (Doc. 42 at 181.)  Respondent concedes that the insufficiency of evidence challenge in amended

9 claim DD relates back to the timely petition.  In amended claim DD, petitioner also challenges

10 the consciousness of guilt instruction (CALJIC 2.06).  This instruction was not mentioned in the

11 original petition.  Thus, the pertinent facts supporting the challenge to the consciousness of guilt

12 instruction were not in the original petition, and it cannot relate back; the facts supporting the

13 alleged insufficiency differed in time and type from the facts mentioned in the original petition.

14      Petitioner also argues that the legal theory for amended claim DD was discussed

15 in the abeyance motion.  It is not enough to discuss the legal theory, there must be a common

16 core of operative facts.  The legal theory can change, but, for relation back, the facts may not.

17 The court finds that amended claim DD relates back to the extent that it challenges the

18 insufficiency of evidence instruction.  The court finds that to the extent that amended claim DD

19 challenges the consciousness of guilt instruction, it does not relate back.

20       Claim HH    TRIAL COUNSEL WERE INEFFECTIVE IN CONCEDING
21                               THAT PETITIONER WAS GUILTY OF SECOND-DEGREE
                               MURDER

22 (Doc. 42 at 204.)  Petitioner's original petition stated that, because "trial counsel was unprepared

23 to present the mental history and test results of the mental health experts" at the time of opening

24 statements,  he was unprepared to present readily available evidence to support a verdict of

25 second degree murder. (Doc. 13 at 141.)  Amended claim HH claims that trial counsel was

26 ineffective in conceding that petitioner was guilty of second degree murder during opening

1   statements.  Both pleadings relate to the trial counsel's argument during opening statements that

2   petitioner was guilty of second degree murder; only the legal theory has changed.  The court

3   finds that amended claim HH relates back to the original petition and is timely.

4        Claim II        TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE
                         WHEN THEY INTRODUCED TESTIMONY FROM LONNIE
5                        THAT PETITIONER MOLESTED HIM AND THE TRIAL
                         COURT ERRED IN ALLOWING FURTHER TESTIMONY ON
6                        THIS ISSUE

7    (Doc. 42 at 206.)  The original petition claimed that petitioner's molestation of Lonnie gave

8   Lonnie a strong motive to lie about petitioner, calling Lonnie's credibility into question.  (Doc.

9   13 at 22.)  The original petition alleged that Lonnie had told others that petitioner molested him.

10  (Id.)  Amended claim II discusses defense counsel's questioning of Lonnie concerning the

11  incident and the prosecution's follow up of that questioning on re-direct.  These are a totally

12  different sets of facts in both time and type from the original claim that Lonnie stated that

13  petitioner molested him and that such evidence gave Lonnie a motivation to lie.  The court finds

14  that this claim does not relate back to the original petition.

15        Claim  JJ       TRIAL COUNSEL WERE INEFFECTIVE IN FAILING TO
                         ASSERT THE CONSTITUTIONAL BASIS OF GUILT PHASE
16                       OBJECTIONS

17  (Doc. 42 at 209.)  The original petition argued that the admission of certain hearsay statements

18  violated the rules of evidence and challenged the trial court's ruling allowing the statements.

19  The original petition stated that trial counsel objected to Lonnie's statements as hearsay.  (Doc.

20  13 at 28-29.)  The original petition argued that trial counsel was inadequate for not objecting to

21  alleged prosecutorial misconduct.  (Doc. 13 at 86.)  The legal theory advanced in amended claim

22  JJ is new; however, the court finds that the amended claim relies on a common core of operative

23  facts which was raised in the original pleading.  The court finds that amended claim JJ is timely.

24  ///

25  ///

26  ///

Claim MM    THE STATE UNCONSTITUTIONALLY SPIED ON MR.
HILLHOUSE'S CONFIDENTIAL COMMUNICATIONS
DURING CONFIDENTIAL TESTING AND USED THIS ILL-
GOTTEN INFORMATION AT TRIAL, WHILE DEFENSE
COUNSEL INEFFECTIVELY ALLOWED THESE
CONSTITUTIONAL VIOLATIONS TO OCCUR AND EVEN
IMPROPERLY INTRODUCED INFORMATION FROM ONE
OF THE SPIES

(Doc. 42 at 218).  Amended claim MM discusses the guards' behavior during the BEAM test and

the Deputy District Attorney's interview of the guards about the BEAM test.  It also discusses

the behavior of defense counsel and the prosecutor's actions at trial regarding the BEAM test

evidence.  The facts listed in the original petition were that guards elicited statements from

petitioner after his BEAM test and illegally told such statements to prosecutors. (Doc. 13 at 140.)

After careful consideration, the court finds that the legal theories in the amended petition have

changed, but the core facts of amended claim MM are contained in the original petition's claims.

Accordingly, the court finds that this claim relates back and is timely.

Claim NN    THE PROSECUTION'S DECEPTIVE AND INVASIVE
INTERVIEWS WITH MR. HILLHOUSE'S FAMILY WERE
UNCONSTITUTIONAL

(Doc. 42 at 248.)  Petitioner's original petition discussed prosecution interviews with Lonnie.  It

did not mention interviews with any of petitioner's other family members.  The core facts of

claim NN are not similar in time and type to the facts of the interviews with Lonnie.  Petitioner

points out that the abeyance motion listed "prosecutorial misconduct...regarding the investigation

conducted by DA investigator Lightner" as an unexhausted claim; however, the abeyance motion

did not set forth the factual basis for this claim.  The facts necessary to support amended claim

NN were not discussed in the original petition or in the abeyance motion.  The court finds that

this claim does not relate back and is untimely.

///

///

///

Claim OO      TESTIMONY AT THE PENALTY PHASE WAS MATERIALLY
INACCURATE AS TO PETITIONER'S FATHER BEING A
CHILD MOLESTER

(Doc. 42 at 275.)  The original petition argued that trial counsel had failed to properly develop

mitigation evidence. (Doc. 13 at 159-161.)  It stated that, had they been called, several witnesses

would have testified that petitioner's father, Donald Hillhouse, abused his wife and children.

(Doc. 13 at 160-61.)  Specifically, it stated that witnesses would have testified that Donald was a

cruel, brutal and abusive man who repeatedly molested petitioner.   Amended claim OO states

that Donald's testimony at petitioner's trial that he had never touched petitioner in a sexual way,

was false.   Amended claim OO states that Donald's testimony at petitioner's trial was

contradicted by his criminal record, which showed that he had plead guilty to lewd acts with a

child.  The operative factual basis for the claim is Donald's arrest record, which differs from the

factual basis of the original claim – that several witnesses would have testified that Donald

abused his children.  The legal theory is the same in the original and amended claims—that the

jury was not presented with the mitigating evidence that petitioner was sexually abused by his

father; however, the facts supporting the original and amended claims are different.  Because the

two claims do not share a core of common facts, the court must find, under Mayle, that amended

claim OO does not relate back to the original petition.

Claim PP      THE PROSECUTION UNCONSTITUTIONALLY ARGUED
LACK OF REMORSE AT THE PENALTY PHASE

(Doc. 42 at 278.)  Petitioner's original petition claims that the prosecutor stated that petitioner "is

what he is...and is going to do exactly what he does until he is dead." (Doc. 13 at 105.)  The

claims in the original petition described that the prosecutor had discussed petitioner's brain

damage to his frontal lobe by saying that the frontal lobe was where decisions were made and

that, once this was eliminated, not much of a human being was left. (Id. at 106.)  The original

petition claimed that the prosecutor characterized petitioner as incapable of caring for other

humans.

1     Amended claim PP claims that the prosecutor improperly told the jury that

2  petitioner had a lack of remorse for his crimes and that petitioner had never demonstrated any

3  sympathy.  (Doc. 42 at 278.)  Although the wording of the prosecutor's allegations is slightly

4  different in the original and amended claims, the core facts are similar in time and type.  The

5  court finds that amended claim PP relates back to the original petition and is timely.

6              Claim QQ        THE PROSECUTOR MISLEAD THE JURY DURING
                                CLOSING ARGUMENT AT THE PENALTY PHASE
7

8  (Doc. 42 at 280.)  There is no common core of operative facts between amended claim QQ's

9  assertion that the prosecutor lied by saying that she always sought the death penalty and

10  operative facts supporting the claims in the original petition.  Careful examination of the original

11  petition shows that the original petition set forth facts indicating that the prosecutor stated that

12  both Lonnie and petitioner were guilty of first-degree murder.  (Doc. 13 at 24-25.)   These facts

13  are similar in time and type to the facts alleged in amended claim QQ to support the claim that

14  the prosecutor lied by suggesting that she always thought that petitioner was the murderer.  The

15  court finds that amended claim QQ relates back to the original claim only with respect to the

16  assertion that the prosecutor mislead the jury during the penalty phase closing argument by

17  suggesting that she always believed petitioner was the murder.

18

19              Claim RR        THE PROSECUTOR REPEATEDLY COMMITTED
                                MISCONDUCT THROUGHOUT THE TRIAL
20

21  (Doc. 42 at 283.)   The original petition mentions prosecutorial misconduct.  The factual basis

22  for the prosecutorial misconduct claims in the original petition differ from the factual basis for

23  the same claims in amended claim RR.   Mayle made clear that a petitioner does not satisfy the

24  Rule 15 "relation back" standard merely by raising some type of ineffective assistance in the

25  original petition, and then amending the petition to assert another ineffective assistance claim

26  based upon an entirely distinct type of attorney misfeasance.  See Mayle, 545 U.S. at 657-58.

1   The court finds that amended claim RR does not relate back.

2         Claim TT     THE TRIAL COURT SHOULD HAVE DECLARED A
                                      MISTRIAL WHEN THE JURY INDICATED IT WAS
3                                         DEADLOCKED AT THE PENALTY PHASE AND TRIAL
                                      COUNSEL WAS INEFFECTIVE FOR FAILING TO MOVE
4                                         FOR A MISTRIAL

5   (Doc. 42 at 292.)  The original petition sets forth a chronology of events during the trial,

6   including the deliberations during the penalty phase.  (Doc. 13 at 107-108).   The original

7   petition mentions that the jury informed the judge that it was deadlocked; the judge sent the jury

8   home for the weekend; and the following Monday morning, the jury delivered its death verdict.

9   (Doc. 108.)  These core facts make up the factual basis for claim TT.  (Doc. 42 at 292-293.)  The

10  court finds that this claim relates back to the original petition.

11        Claim WW     TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE
                                      BY FAILING TO PURSUE A PLEA BARGAIN
12

13  (Doc. 42 at 317.)  The original petition discussed Lonnie's plea bargain; however, it made no

14  mention of any plea bargain (or failure to seek such) for petitioner.  The fact that a plea bargain

15  was entered into with Lonnie does not form the core set of facts to support the claim that

16  petitioner's counsel should have sought a plea for him.  The court finds that this claim does not

17  relate back.

18        Claim XX     TRIAL COUNSEL FAILED TO ASSERT THE
                                      CONSTITUTIONAL BASES OF PENALTY PHASE
19                                        OBJECTIONS

20  (Doc. 42 at 318.)  The original petition describes defense counsel's failure to assert

21  constitutional bases for objections during the penalty phase.  (Doc. 84-85.)  Amended claim XX

22  relies on these facts from the original petition, although they are used to bolster a different legal

23  theory.  The court finds that amended claim XX relates back to the original petition.

24  ///

25  ///

26  ///

1      Claim YY       TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE
                      BY MAKING IMPORTANT TESTIMONY AS TO THE
2                     VICTIM'S PUNCTATE WOUNDS" A RUNNING JOKE AT
                      TRIAL
3

4    (Doc. 42 at 320.)  The original petition stated that Lonnie testified that a fight immediately

5    preceded the murder.  (Doc. 13 at 17-18.)  The original petition described that Lonnie stated that

6    petitioner and the victim exchanged words while the victim was urinating and that Lonnie heard

7    a thunk sound when petitioner first stabbed the victim.  Although these facts describe a fight and

8    a stabbing, they do not share a common core of operative facts with amended claim YY.

9    Nothing in Lonnie's description of the fight could be used to support the assertion in amended

10   claim YY that trial counsel provided ineffective assistance of counsel by making jokes.  The

11   facts in the original and amended petitions are completely different in time and type.  The court

12   finds that this claim does not relate back.

13     Claim BBB      MR. HILLHOUSE WAS MADE TO ENDURE A TORTUROUS
                      PROCEDURE KNOWN AS A BEAM ALCOHOL CHALLENGE
14                    IN VIOLATION OF HIS CONSTITUTIONAL RIGHTS

15   (Doc. 42 at 407.)  The original petition stated that petitioner was administered a BEAM test; that

16   the raw data of the test was sent to consulting doctors; and that the test results were received in

17   mid-May, almost at the end of the guilt phase.  (Doc. 13 at 140.)  The original petition does not

18   describe how the BEAM test is administered.   Amended claim BBB's assertions that the BEAM

19   test violated petitioner's constitutional rights rests on very detailed factual description of the

20   BEAM test.  The facts which were contained in the original petition could not support amended

21   claim BBB.  The original and amended claims do not share a common core set of facts.  The

22   court finds that amended claim BBB does not relate back to the original petition.

23     Claim CCC      THE TRIAL COURT ERRED AND TRIAL COUNSEL WERE
                      INEFFECTIVE FOR FAILING TO REQUEST A JURY
24                    INSTRUCTION PROHIBITING THE DOUBLE COUNTING OF
                      ACTS UNDERLYING THE SPECIAL CIRCUMSTANCE
25

26   (Doc. 42 at 411.)  The original petition sets forth facts about double counting of certain

                                                   23

1   aggravating factors.  (Doc. 13 at 116-117.)  Amended claim CCC relies on double counting

2   aggravating factors to support an error and ineffective assistance of counsel claim.  Although a

3   different legal theory is advanced, the original and amended petitions rely on the same core of

4   common facts.  The court finds that this claim relates back.

5       Claim DDD  THE TRIAL COURT ERRED BY FAILING TO INSTRUCT
                 THE JURY THAT PETITIONER MAY RELY ON THE STATE
6                 OF THE EVIDENCE AT THE PENALTY PHASE

7   (Doc. 42 at 413.)  Amended claim DDD is based on CALJIC Nos 2.60 and 2.61.  Although the

8   original petition contains claims that some jury instructions undermined the constitutional

9   requirement of proof beyond a reasonable doubt, the factual basis in the original petition's

10  claims cannot support amended claim DDD, which concerns an alleged constitutional violation

11  based on the trial court's failure to provide the jury guidance regarding petitioner's decision not

12  to testify.  (Doc. 42 at 413.)  Because there is no common core of facts, the court finds that

13  amended claim DDD does not relate back.

14       Claim EEE  DEFENSE COUNSEL'S CONFLICTS OF INTEREST
                 DEPRIVED MR. HILLHOUSE OF HIS CONSTITUTIONAL
15                 RIGHT TO THE ASSISTANCE OF COUNSEL, DUE PROCESS,
                 EQUAL PROTECTION, AND A RELIABLE CAPITAL
16                 PROCEEDING

17  (Doc. 42 at 416.)  Amended claim EEE rests on new factual allegations which were not

18  mentioned in the original petition.  For example, this claim discusses expanded facts concerning

19  the BEAM alcohol challenge and allegations that petitioner is an incurable sociopath.  While the

20  BEAM alcohol challenge and accusations that petitioner was a sociopath were mentioned in the

21  original petition, the facts described in the original petition differ in time and type from those in

22  the amended petition.  Accordingly, the court finds that this claim does not relate back.

23       Claim FFF  PETITIONER'S INVESTIGATOR HAD A CONFLICT OF
                 INTEREST
24

25  (Doc. 42 at 433.)  Petitioner's amended complaint alleges that Absolute Investigative Services

26  had also been appointed for Lonnie.  This appointment was not mentioned in the original

1   petition.  The original petition details a factual basis for claims that Lonnie testified

2   inconsistently, was not believed by the prosecutors, and testified against petitioner only because

3   of the plea agreement he was offered, but the original petition does not mention that the same

4   investigator was used for both petitioner and Lonnie.  Claim FFF does not share a common core

5   of facts with claims in the original petition.  The court finds that it does not relate back.

6         Claim GGG      CUMULATIVE EFFECT OF TRIAL COUNSEL'S ERRORS
                         DEPRIVED PETITIONER OF A FAIR AND RELIABLE TRIAL
7                        AT THE PENALTY PHASE

8   (Doc. 42 at 435.)  The commutative error claims referenced in the original petition reference

9   different errors than those discussed in amended claim GGG.  The amended claims depend upon

10  separate events in time and type. The court finds that amended claim GGG does not relate back.

11        Claim HHH      THE CALIFORNIA SUPREME COURT IMPLICITLY HELD
                         THAT PETITIONER WAS CONVICTED AND SENTENCED
12                       TO DEATH BY A JURY AND TRIAL COURT THAT WERE
                         UNREASONABLE
13

14  (Doc. 42 at 437.)  Respondent concedes that this claim relates back.

15        Claim III      THE CALIFORNIA SUPREME COURT'S HOLDING THAT
                         JURY SELECTION ISSUES HAD NOT BEEN PRESERVED ON
16                       APPEAL WAS UNCONSTITUTIONAL

17  (Doc. 42 at 439.)  The original petition stated that California Supreme Court reversed petitioner's

18  kidnapping for robbery conviction and kidnapping-murder special circumstance, but did not set

19  aside the death penalty.  Amended Claim III is much more specific–it discusses the underlying

20  jury issue.   The general discussion of the California Supreme Court's decision in the original

21  petition does not share a common core of operative facts with amended claim III's specific jury

22  instruction claim.  The court finds that this claim does not relate back.

23        Clain JJJ      THE CALIFORNIA SUPREME COURT ERRED ON APPEAL
                         WHEN IT FAILED TO REVERSE THE DEATH PENALTY
24                       AFTER FINDING THAT ONE SPECIAL CIRCUMSTANCE
                         WAS IMPROPERLY TRUE
25

26  (Doc. 42 at 441.)  Respondent concedes that this claim relates back.

Claim LLL     PETITIONER CANNOT BE CONSTITUTIONALLY
              EXECUTED UNDER THE <u>ATKINS V. VIRGINIA</u> RULE

(Doc. 42 at 448.)  The original petition sets forth that petitioner had temporal and frontal lobe brain damage, which impairs his ability to control his emotions, and that alcohol magnified his inability to control his emotions.  (Doc. 13 at 140-141.)  The operative facts of amended claim LLL are that petitioner has a mental age of between two and twelve. The original petition did not explicitly state that petitioner was mentally retarded or operating at a mental age of between two and twelve.  However, the facts of brain damage and inability to control emotions are simply a different way of saying that petitioner is mentally challenged.  Amended claim LLL has a common core of operative facts with the original pleading and merely states a new legal theory. The court finds that this claim relates back.

Claim MMM     THE CALIFORNIA SUPREME COURT'S
              PROCEDURES FOR ADDRESSING PETITIONER'S
              <u>ATKINS</u> CLAIM ARE CONSTITUTIONALLY
              INADEQUATE

(Doc. 42 at 450.)  The original petition does not discuss the California Supreme Court's procedures for addressing <u>Atkins</u> claims.  The factual basis upon which amended claim MMM relies is not mentioned anywhere in the original petition.  Petitioner points out that his abeyance motion stated in a footnote that "the potentially unexhausted claims include, but are not limited to...California statutory procedures to determine 'sanity' to be executed do not comport with federal constitutional requirements."  As discussed earlier, a notice pleading without a listing of supporting facts is not enough to satisfy relation back under Rule 15.  The court finds that amended claim MMM does not relate back to the original petition.

Claim NNN     THE CALIFORNIA SUPREME COURT DENIED
              PETITIONER A FAIR CONSIDERATION OF THE
              AUTOMATIC APPEAL

(Doc. 42 at 453.)  The facts supporting claim NNN are that the California Supreme Court's

habeas review process is dominated by politics; that the California judiciary has lost its

independence from the other branches of government.  (Doc. 42 at 454.)  The amended petition

extensively discusses the political history of California's governors.  (Id.)  There are no facts in

the original petition which discuss the political overshadowing of the California Supreme Court.

The court finds that this claim does not relate back to the original petition.

Claim OOO          THE CALIFORNIA SUPREME COURT DENIED
                   PETITIONER FAIR CONSIDERATION OF HIS PRIOR
                   HABEAS CORPUS PETITIONS

(Doc. 42 at 469.)  The facts supporting amended claim OOO  are that the California Supreme

Court refused to engage in a meaningful review of petitioner's state habeas application.  He cites

numerous problems with habeas review in the California courts.  Although the procedural history

of petitioner's habeas claim is mentioned in both the amended and original pleadings, the facts

concerning the failings of the Supreme Court are not. Amended claim OOO relies on facts which

do not appear in the original petition. The court finds that amended claim OOO does not relate

back to the original petition.

Claim PPP     APPELLATE COUNSEL RENDERED INEFFECTIVE
              ASSISTANCE OF COUNSEL

(Doc. 42 at 475.)  Petitioner's original petition argued that cumulative error infected petitioner's

conviction, including, prosecutorial misconduct during the penalty phase, selection of a biased

jury, denial of his right to competent counsel, jury misconduct, and serious instructional error.

(Doc. 13 at 189.)   The facts supporting amended claim PPP are that appellate counsel was

ineffective representing petitioner because they failed to raise numerous claims without

justification.  The facts relied upon in the original petition are not the same as those relied on by

amended claim PPP; the amended claim does not rely on the same common core of facts as the

original petition.  Petitioner points out that amended claim PPP was noted in the footnote in his

abeyance motion; however, under Mayle a notice pleading is not sufficient for relation back.

The court finds that amended claim PPP does not relate back.

1          Claim QQQ     HABEAS COUNSEL RENDERED INEFFECTIVE
ASSISTANCE

2

3 (Doc. 42 at 477.)  The original petition does not contain any of the facts relied upon to support

4 amended claim QQQ.  The court finds that it does not relate back.

5          Claim RRR     THE CUMULATIVE ERROR OF COUNSEL'S ERRORS
WARRANT REVERSAL

6

7 (Doc. 42 at 480.)   The original petition alleged that the cumulative effect of all the errors and

8 violations alleged in the present petition rendered the trial unfair; however, the facts supporting

9 this contention are very general and conclusory.  The facts supporting amended claim RRR are

10 that, over the course of the trial, defense counsel's errors created a total breakdown of the

11 adversarial process.  Petitioner discusses trial counsel's failure to introduce mitigating evidence

12 and the failure to investigate mitigating evidence (Doc. 42 at 481).  To support amended claim

13 RRR, petitioner must rely on facts which were not mentioned in the original petition–the claims

14 do not share a common core of facts.  The court finds that this claim does not relate back.

15          Claim AAAA     THE CALIFORNIA DEATH PENALTY SCHEME IS
UNCONSTITUTIONAL SINCE IT ALLOWS COUNTY

16                              PROSECUTORS UNLIMITED DISCRETION IN
SEEKING THE DEATH PENALTY WITHOUT ANY

17                              STATE WIDE UNIFORM STANDARDS

18 (Doc. 42 at 521.)   The amended petition alleged that petitioner's death sentence rested in part on

19 a constitutionally inadequate narrowing factor. (Doc. 13 at 186-187.)  Amended claim AAAA

20 relies on assertions and supporting facts that the death penalty is sought in an inconsistent

21 manner throughout the California.  Specifically, amended claim AAAA rests on facts concerning

22 the wide prosecutorial discretion in seeking the death penalty.  Such facts are not included in the

23 original petition.  The court finds that amended claim AAAA does not relate back to the original

24 petition.

25 ///

26

Claim BBBB   DEATH QUALIFICATION OF THE JURY WAS
UNCONSTITUTIONAL

(Doc. 42 at 528.)   The original petition claimed that jurors were biased in favor of the death

penalty (Doc. 13 at 43,46, 47-48.)  Amended claim BBBB rests on allegations that numerous

jurors were removed from the panel because they were opposed to the death penalty.  (528).

Specifically, amended claim BBBB claims that such jurors were sought out and excluded from

the jury.  Although the outcome is the same–a jury biased in favor of death, the core facts

supporting the original and amended claims are different.  The facts supporting petitioner's

contention that the empaneled jurors were biased in favor of death does not support his claim

that jurors opposed to the death penalty were sought out and excluded from jury service.  The

court finds that this claim does not relate back.

Claim CCCC            DEATH QUALIFICATION VIOLATED PROSPECTIVE
JURORS' RIGHTS

(Doc. 13 at 570.)  The original petition claimed that jurors were biased in favor of the death

penalty and included facts to support this claim.  (Doc. 13 at 43,46, 47-48.)  Those supporting

facts, however, do not support amended claim CCCC's assertion that death qualification violated

prospective juror's rights.  The original petition and amended claim CCCC do not share a

common core of facts.  The court finds that this claim does not relate back.

Claim EEEE            CALIFORNIA'S DEATH PENALTY SCHEME IS
UNCONSTITUTIONAL

(Doc. 42 at 584.)  This claim is made up of numerous sub-claims, and respondent concedes that

the following sub-claims relate back:

> (1)     death eligibility and special circumstances (Doc. 13 at 584.)
> (2)     multiple counts of special circumstances and aggravated claims
>          (586.)
> (3)     circumstances of the crime factor claims (588.)
> (4)     unadjudicated violent criminal activity claims (589.)
> (5)     factor 190.3(c) prior felony claims (590.)
> (6)     failure to identify aggravating and mitigating factors (593.)

(7)  failure to require unanimity as to aggravating circumstances (597.)
(8)  lack of unanimous findings by the jury claims (597.)
(9)  burden of proof and persuasion claims (599.)
(10) proportionality of sentence and comparative sentencing claims (602.)
(11) cumulative lack of procedural and substantive protections violates the constitution (604.)

None of the other sub-claims in amended claim EEEE relate back to the original claim, except for the cumulative constitutional error claim, which relates back only to the extent that it alleges petitioner has a right to a fair trial and equal protection under the Sixth and Fourteenth Amendments.  (Doc. 13 at 188; Doc. 42 at 605.)  The court finds that the other sub-claims in amended claim EEEE do not relate back.

Claim FFFF     THE DEATH PENALTY AS CURRENTLY ADMINISTERED IN CALIFORNIA IS UNCONSTITUTIONAL

(Doc. 42 at 607.)  The facts supporting amended claim FFFF are that: DNA evidence has proven people innocent; the Governor of Illinois commuted death sentences; the Green River killer was not sentenced to death; and public sentiment against the death penalty is growing.  These facts were not mentioned in the original petition.  The court finds that there is no relation back.

Claim JJJJ     PETITIONER'S CONVICTIONS AND DEATH SENTENCE MUST BE VACATED BECAUSE OF THE CUMULATIVE EFFECT OF ALL THE ERRORS AND CONSTITUTIONAL VIOLATIONS SHOWN IN THIS PETITION AND THE AUTOMATIC APPEAL

(Doc. 42 at 630.)  The original petition contains a cumulative error claim. (Doc. 13 at 187-190.)  However, the cumulative error claim in the original petition is much narrower than amended claim JJJJ.  The original and amended cumulative error claims do not share a common core of operative facts.  In other words, the facts which support the cumulative error claim in the original petition would not support the amended cumulative error claim.  The court finds that amended claim JJJJ does not relate back to the original petition.

///

///

30

1    C.    Equitable Tolling

2          Petitioner argues that, even if his amended claims do not relate back to his

3    original petition under Mayle, the court should not dismiss the amended claims because

4    he is entitled to equitable tolling of AEDPA's one-year limitations period.  Specifically,

5    petitioner avers that he is entitled to equitable tolling due to (1) the failings of his state appointed

6    counsel; (2) uncertainty in the law; and (3) reliance on this court's abeyance order.

7          The burden of demonstrating grounds for equitable tolling rests with the prisoner.

8    See Guillory v. Roe, 329 F.3d 1015, 1018 (9th Cir. 2003).   In order to win equitable tolling, a

9    prisoner must demonstrate (1) extraordinary circumstances beyond the prisoners control that (2)

10   made it impossible to file a petition on time.   Miranda v. Castro, 292 F.3d 1063, 1066 (9th Cir.

11   2002).  Equitable tolling is "unavailable in most cases."   Miles v. Prunty, 187 F.3d 1104, 1107

12   (9th Cir. 1999).  Indeed, "the threshold necessary to trigger equitable tolling is very high, lest the

13   exceptions swallow the rule."   Miranda v. Castro, 292 F.3d 1063, 1066 (9th Cir. 2002). In other

14   words, to get equitable tolling due to a change in the law, petitioner must show that an external

15   force, rather than his own lack of due diligence, was the cause of the petition's untimeliness.   See

16   Miles, 187 F.3d at 1107.

17   1.    Failings Of State Appointed Counsel

18          Petitioner contends that his state appointed counsel's failure to raise all of his

19   meritorious claims in the state habeas process warrants equitable tolling.  The Ninth Circuit has

20   concluded that, in general, counsel's negligence does not constitute extraordinary circumstances

21   sufficient to warrant equitable tolling.  See Frye v. Hickman, 273 F.3d 1144, 1145 (9th Cir.

22   2001).  The court finds that petitioner is not entitled to equitable tolling due to his state

23   appointed counsel's negligence, if any.

24   ///

25   ///

26   ///

1    2.  Uncertainty in the Law

2    Petitioner argues that the change in the law between the time that he filed his

3 original federal petition and his amended petition is an extraordinary circumstance which

4 justifies equitable tolling.  Specifically, petitioner argues that the change in law from interpreting

5 Federal Rule of Civil Procedure 15(c)'s relation back provision very broadly, to a much

6 narrower reading of Rule 15(c) after the Supreme Court's decision in Felix v. Mayle in 2005

7 justifies equitable tolling.

8    The California Supreme Court affirmed petitioner's first-degree murder

9 conviction and death sentence on February 25, 2002.   Petitioner filed a timely petition for

10 certiorari in the United States Supreme Court, which was denied on January 13, 2003, making

11 petitioner's conviction final under AEDPA.  Under AEDPA's one-year limitations period,

12 petitioner's federal habeas petition was due on January 14, 2004.  This court appointed counsel

13 for petitioner in February and November 2003.  Petitioner filed his first federal petition on

14 December 31, 2003 and filed a motion to hold the federal proceedings in abeyance on the same

15 day.  (Docs. 12 & 13.)

16    Generally, only a change in substantive law would entitle a petitioner to equitable

17 tolling due to a change in the law.  Landgraf v. USI Film Products, 511 U.S. 244 (1994) (noting

18 that procedural changes "may often be applied in suits arising before their enactment without

19 raising concerns about retroactivity").  To be entitled to equitable tolling based on a procedural

20 change, a prisoner would have to demonstrate detrimental reliance on the changed procedure.

21  Here, the court finds that petitioner cannot demonstrate reliance to his detriment on the Ninth

22 Circuit's broad interpretation of relation back in Felix v. Mayle, 379 F.3d 612 (9th Cir. 2004).

23    Petitioner filed his original petition in December 2003, prior to the Ninth Circuit's

24 August 9, 2004 decision in Mayle; therefore petitioner could not have relied on Mayle's broad

25 interpretation of relation back when he filed his original petition.

26

1    The court recognizes that habeas corpus is governed less by statutory

2 developments than by a "complex and evolving body of equitable principles formed and

3 controlled by historical usage." McCleskey v. Zant, 499 U.S. 467, 489 (1991).  However, the

4 court does not want to employ Rule 15(c) as a method of extending AEDPA's deadline.

5 Keeping these principles in mind, the court considers whether the state of the law in December

6 2003 regarding relation back under Rule 15(c) would have allowed petitioner to reasonably rely

7 on a very broad interpretation of relation back.

8    In December 2003, when petitioner filed his original petition, a majority of the

9 circuits (five) had taken a narrow view of relation back under Rule 15(c).  See United States v.

10 Hicks, 283 F.3d 380 (D.C. Cir. 2002); Davenport v. United States, 217 F.3d 1341 (11th Cir.

11 2000); Unites States v. Pittman, 209 F.3d 314, (4th Cir. 2000); United States v. Duffus, 174 F.3d

12 333 (3rd Cir. 1999): United States v. Craycroft, 167 F.3d 451 (8th Cir. 1999).  One circuit had

13 read Rule 15(c) very broadly.  See Ellzey v. United States, 324 F.3d 521 (7th Cir. 2003).  The

14 Ninth Circuit had not yet decided this issue; however, in Anthony v. Cambra, 236 F.3d 568 (9th

15 Cir. 2000), the Ninth Circuit distinguished the majority of the circuits' narrow interpretation of

16 relation back.  In Anthony, the Ninth Circuit stated that because "each of petitioner's newly-

17 exhausted claims in [his] amended petition was included (in unexhausted form) in his

18 original...petition.....the state clearly had been on notice of the claims" and of petitioner's intent

19 to raise the claims.  Anthony, 236 F.3d at 576-77.  Thus, the Ninth Circuit concluded that

20 Anthony was distinguishable from the majority's narrow view of Rule 15(c) because those cases

21 relied on the absence of notice to the state regarding the content of the proposed amendments as

22 ground for denying the motion.  See id. at 577.

23    Additionally, at least one decision in this district had taken a narrow view of

24 relation back under Rule 15(c).  By findings and recommendations filed May 14, 2002 in Felix v.

25 Mayle, the court concluded that  "[t]he court cannot find that an involuntary statement claim

26 whose genesis is based on petitioner's pre-trial interrogation by the police derives from the same

core of facts as the third party videotape Confrontation Clause issue.  Not even the same

constitutional amendment is in dispute for the underlying events.  Obviously, the theories and

facts of the claims are distinct."  (Felix v. Mayle, Civ-S-98-0828 WBS GGH P (doc. 45) 5:3-6.)

These findings and recommendations were adopted in full by order filed August 10, 2002.

Thus, when petitioner filed his original petition and abeyance motion in

December 2003, five circuits had adopted a narrow view of relation back, one circuit had

interpreted relation back very broadly, this District had adopted the narrow view of relation back

in at least one decision, and the Ninth Circuit had not directly addressed this issue, although it

had distinguished Anthony from majority view on relation back on the grounds that Anthony had

included the grounds for his newly-exhausted claims in his amended petition in his original

petition, giving the state notice of his claims.

Obviously, in December 2003, there was no clear statement on how to interpret

relation back under Rule 15(c) with regard to habeas cases and AEDPA.  However, it is clear

that the majority view was that relation back should be construed very narrowly.  Additionally,

in Anthony, the Ninth Circuit had indicated that relation back depended on including the newly

exhausted claims in the amended petition in a timely original petition— giving respondent notice

of "the facts and claims giving rise to the proposed amendments." Anthony, 236 F.3d at 576.

Given the state of the law on relation back in December 2003, the court cannot find that it was

reasonable for purposes of equitable tolling, for petitioner to have relied on a broad interpretation

of relation back.  The court concludes that petitioner has not demonstrated that the change in the

law was an extraordinary circumstance which prevented him from giving respondent notice of

the facts of his unexhausted claims.

The court is cognizant that, in December 2003, petitioner could not have filed a

mixed petition in federal court.  Rhines v. Weber, 544 U.S. 269 (2005), which was decided in

April 2005, established that a mixed petition could be filed and held in abeyance in federal court.

However, in December 2003, it was possible for a petitioner to file an exhausted petition which

34

1   also included his unexhausted claims and their factual predicates.  See e.g., Gonzales, 2006 WL

2   83054 at * 14.  Similarly, unexhausted claims and their operative facts could have been listed in

3   the abeyance motion.

4          The court recognizes that petitioner did list, in a footnote, in both his original

5   petition and his abeyance motion, his potential unexhausted claims.  However, petitioner did not

6   include the factual basis for his claims.  Thus, Rule 15(c)'s central policy–ensuring that the non-

7   moving party has sufficient notice of the facts and claims giving rise to the proposed

8   amendments, was not satisfied.

9          The court has given careful consideration to petitioner's equitable tolling claim,

10  and is not unsympathetic to petitioner's claim; however, given the state of the case law at the

11  time petitioner filed his petition in 2003, the court cannot conclude that petitioner reasonably

12  relied on a broad interpretation of relation back under Federal Rule of Civil Procedure 15.  In

13  short, the court finds that petitioner has not borne his burden of demonstrating that the Supreme

14  Court's decision in Mayle was an extraordinary circumstance which made it impossible for him

15  to timely give notice of his amended claims.

16                     3.      Reliance On This Court's Abeyance Order

17          Petitioner asserts that he is entitled to equitable tolling because he relied on this

18  court's order holding his original petition in abeyance with the understanding that he would be

19  able to return to this court following state exhaustion and present the newly exhausted claims in

20  an amended petition.  However, petitioner has not demonstrated that this court actively mislead

21  him and that extraordinary circumstances beyond petitioner's control prevented him from giving

22  timely notice of his claims.  See Brambles v. Duncan, 412 F.3d 1066 (9th Cir. 2005).

23  V.      Conclusion

24          IT IS RECOMMENDED that:

25          (1) Respondent's motion to dismiss be granted in part and denied in part.

26          (2) The court recommends that the following claims be found to relate back to the

1    original petition and, therefore, be timely:

2              Claim A
               Claim B
3              Claim Q        only to the initial search of the dwelling where petitioner
                              and Lonnie lived and to Lonnie's statements
4              Claim Z
               Claim DD       only to the insufficiency of evidence instruction
5              Claim HH
               Claim JJ
6              Claim MM
               Claim PP
7              Claim QQ       only to the claim that the prosecutor mislead the jury when
                              she stated that the always thought that petitioner was the
8                             murderer
               Claim TT
9              Claim XX
               Claim CCC
10             Claim HHH
               Claim JJJ
11             Claim LLL
               Claim EEEE     only with respect to the following sub-claims:  (1)death
12                            eligibility and special circumstances (Doc. 13 at
                              584;)(2)multiple counts of special circumstances and
13                            aggravated  claims (586;)(3) circumstances of the crime
                              factor claims (588;)(4) unadjudicated violent criminal
14                            activity claims (589;) (5) factor 190.3(c) prior felony
                              claims (590;)(6) failure to identify aggravating and
15                            mitigating factors (593;)(7) failure to require unanimity as
                              to aggravating circumstances (597;) (8) lack of unanimous
16                            findings by the jury claims (597;) (9) burden of proof and
                              persuasion claims (599;)(10) proportionality of sentence
17                            and comparative sentencing claims (602.) (11) cumulative
                              lack of procedural and substantive protections violates the
18                            constitution (604;) and (12) cumulative error instruction
                              only with respect to the fair trial and Sixth and Fourteenth
19                            Amendment claims.

20             (3) The court recommends that the following claims be found not to relate back to

21   the original claim and, therefore, be denied as untimely:

22             Claim E
               Claim F
23             Claim G
               Claim R
24             Claim S
               Claim W
25             Claim X
               Claim Y
26             Claim II

Claim NN
Claim OO
Claim RR
Claim WW
Claim YY
Claim BBB
Claim DDD
Claim EEE
Claim FFF
Claim GGG
Claim III
Claim MMM
Claim NNN
Claim OOO
Claim PPP
Claim QQQ
Claim RRR
Claim AAAA
Claim BBBB
Claim CCCC
Claim FFFF
Claim JJJJ

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within ten days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  See  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).


DATED:   April 17, 2007.


CRAIG M. KELLISON
UNITED STATES MAGISTRATE JUDGE